José Rosa, ETC., ET AL., Plaintiffs and Appellants, *v.* Heirs OF Manuel Jiménez Cruz, ETC., Defendants and Appellees.

No. 10724.   Argued March 5, 1954.—Decided December 2, 1954.

*Bolívar Pagán* for appellants.   *Miranda Esteve & Martínez Alvarez,* Jr., for appellees.

Mr. Justice Belaval delivered the opinion of the Court.

On October 10, 1899, Teresa Rosa Urvelo, resident of Aguas Buenas, executed a will before Notary José Abelardo Cajas y Machado, constituting Manuel Jiménez Cruz as her sole heir.   At the time of execution of the will Teresa Rosa Urvelo had a sister, Antonia Rosa Urvelo, who had a son and it is his heirs who now challenge the will in favor of Manuel

Jiménez Cruz. The testatrix died on October 31, 1899, and from that date, Manuel Jiménez Cruz first, and later his heirs, have been in possession of certain rural and urban properties which originally belonged to the testatrix, Teresa Rosa Urvelo.

On January 27, 1926, José Rosa, the natural acknowledged son of Antonia Rosa, filed for the first time, through his counsel Arturo O'Neill, before the former District Court of San Juan, Civil action No. 820 against the heirs of Manuel Jiménez Cruz for nullity of will and revendication (Tr. 179). After the usual preliminaries, the proceedings were stayed until November 22, 1933, when Arturo O'Neill, counsel for plaintiff, filed a motion to set aside the dismissal of the case (Tr. 179) and (Tr. 180). Nothing further was done in the aforesaid case until August 2, 1948, when a motion by another attorney, Diego O. Marrero, appears on record withdrawing from the representation of the plaintiff, although the record shows no withdrawal of the former counsel and no substitution of new counsel (Tr. 180).

On March 8, 1949, José Rosa, this time through his counsel Bolívar Pagán, filed a second action in the former District Court of Caguas, Civil case No. 2882 for revendication and other reliefs, against the heirs of Manuel Jiménez Cruz (Tr. 134), which is the action giving rise to the present appeal.

On February 24, 1950, the clerk of the Court notified the parties to the first action filed in the former District Court of San Juan, that the dismissal for abandonment had been requested in view of the fact that no subsequent steps had been taken in the first complaint, and that the parties were granted the usual term to appear and show cause why judgment should not be entered decreeing the lapse of proceedings through abandonment (Tr. 180). Since none of the parties appeared, on March 24, 1950, the District Court of San Juan rendered judgment declaring the lapse of pro-

ceedings through abandonment (Tr. 180). Some time after March 24, 1950, possibly during the month of September, 1950 (Tr. 185), the plaintiff in the action before the former District Court of San Juan appeared through his counsel Bolívar Pagán before the District Court of Puerto Rico, San Juan Section, successor of the former District Court of San Juan, praying that the judgment decreeing the lapse of proceedings through abandonment, be set aside upon plaintiff showing cause under oath for failing to appear and object to the dismissal by the clerk of the court (Tr. 180). On November 17, 1950, the District Court of Puerto Rico entered an order dismissing the motion to set aside the judgment decreeing the lapse of proceedings through abandonment on two grounds: (1) because it had been made outside the term of six months from the date when the judgment was rendered according to Rule 60 (*b*) of the Rules of Civil Procedure of Puerto Rico and the ruling laid down by this Court in *Great Am. Ins. Co.* v. *District Court*, 67 P.R.R. 529, and (2) because a substantially identical cause of action, No. R–2882, was pending in the District Court of Puerto Rico, Caguas Section, between the same parties, that is, the aforesaid second complaint filed on March 8, 1949 (Tr. 180 and 181). José Rosa did not appeal from the order refusing to set aside the judgment decreeing the lapse of proceedings through abandonment, and therefore we must consider the judgment of lapse of proceedings through abandonment as final and unappealable.

On February 24, 1951, defendants Florentina Jiménez, widow of Jiménez, Manuel Guillermo, Concepción, Félix, Jorge, and Gabriel Jiménez y Jiménez filed within the second civil action brought in the former District Court of Caguas, then District Court of Puerto Rico, Caguas Section, a motion for summary judgment alleging mainly that from the very averments of the complaint and from the sworn statements attached, it appeared that at the time the com-

plaint in this second case was filed, the defendants and their predecessors in title had been, and still were, in possession of the immovables referred to in the complaint, quietly, publicly, peacefully, and uninterruptedly for more than 50 years, the defendants having acquired said immovables by virtue of extraordinary prescription.

On March 13, 1951, plaintiff José Rosa filed in the second civil action an opposition to the defendants' motion for summary judgment alleging primarily that the defendants were not in quiet, public, and peaceful possession for the term of prescription, since, as revealed by the record, the action in the case herein was commenced in 1926, thus interrupting the alleged term of prescription. Undoubtedly, plaintiff referred to the first civil action filed by the plaintiff in the former District Court of San Juan under No. 820 in which a judgment decreeing the lapse of proceedings through abandonment had already been rendered. In opposition, he further alleged that he had a recorded title as successor in interest of his ancestor Teresa Rosa Urvelo.

On February 7, 1951, co-defendant Isabel Jiménez González, daughter by the first marriage of Manuel Jiménez Cruz and, as such, also one of the heirs together with her stepmother and stepbrothers, filed in the second civil action another motion for summary judgment, alleging mainly that since the portion of her inheritance was awarded to her from other properties of her ancestor which were not the ones claimed by plaintiff, judgment should be rendered dismissing, with respect to her, the amended complaint.

On May 24, 1951, the plaintiff José Rosa filed in the second civil action a motion for summary judgment, alleging principally that there is no real controversy between the parties as to plaintiff's ownership right over the property sued on and as to the nullity of the alleged open will referred to therein, which will is clearly null and void, among other reasons, because it has not been duly recorded in the corre-

sponding Registry and because it was executed before a person who, at the time of its execution, was not a notary.

The District Court of Puerto Rico, Caguas Section, speaking through its judge, Carlos Santana Becerra, rendered judgment sustaining the motion for summary judgment filed by the defendants upon examination of the documents attached to said motion, and dismissing the action for revendication and other reliefs filed in the former District Court of Caguas under No. 2882, mainly on the following grounds: (1) because defendants and their predecessor have been in the material possession of the property, in the belief that they are the owners, for over 30 years, uninterruptedly, publicly and peacefully; (2) because § 1859 of the Civil Code of Puerto Rico in relation with § 1860 is applicable; (3) because the possession by defendants has not been interrupted either naturally or civilly; (4) because the fact that the property is still recorded in the name of the deceased Teresa Rosa Urvelo does not affect defendants' title by prescription.

Plaintiff and appellant, now substituted by his heirs, has assigned the following errors against said judgment: (1) The trial court erred in holding that the defendants, by extraordinary acquisitive prescription, and against plaintiff's recorded title, were the owners of the property in litigation; (2) the trial court erred in dismissing the motion for partial summary judgment filed by the plaintiff.

We have scrutinized the admissions contained in the pleadings and the documentary evidence attached to the motions for summary judgment, and we wholly agree with the finding of fact of the trial judge to the effect that defendants and their predecessor have been in the material possession of the property involved herein for over 30 years, uninterruptedly, publicly, and peacefully, in the belief that they are the owners.

In a recent decision of this Court, *Dávila* v. *Córdova*, *ante* p. 125, we analized broadly the legal effects of extraordinary

acquisitive prescription, determining each concept involved in the legal institution, and reaching the following conclusion: in order to produce the extraordinary acquisitive prescription established by § 1859 of the Civil Code of Puerto Rico, proof of the following particulars must be demanded by our courts: (1) uninterrupted possession for thirty years; (2) tolerated by the owner of the immovable; (3) the possessor has entered in the possession of the immovable without authorization, permit or license granted by the owner or by virtue of a contract; (4) possession in the public belief that he is the owner, that is, according to the collective belief of the community where he lives and not according to the possessor's own belief that he is the owner of the immovable; (5) publicly and peacefully; (6) without natural interruption, that is, without abandonment of the thing by the possessor for more than one year, or without civil interruption, that is, by virtue of a judicial or notarial citation as to which the plaintiff has not withdrawn his complaint or permitted the proceedings to lapse or suffered dismissal of the suit, and provided that there has not been any express or implied acknowledgment on the part of the possessor with regard to the right of the owner, or that the possessor has waived expressly or impliedly his title of prescription by any cause which is effective in law for such waiver, after extraordinary prescription has taken place.

The two fundamental grounds for the argument of plaintiff-appellant are: (1) that anyone having a title recorded in the registry possesses *de jure*, (2) and that in the instant case the extraordinary prescription was interrupted by virtue of the action filed in the former District Court in the year 1926.

As to the first ground we held in the afore-cited case of *Dávila* v. *Córdova*, the following: "Appellee's theory at the trial seems to be that, since the heirs have, as they do have, a title which is recorded in their predecessor's name, such fact was sufficient to defeat appellant's right of possession

pursuant to § 1849 of our Civil Code, which provides: 'Against the title recorded in the registry of property, the *ordinary* prescription of ownership or of property rights shall not obtain to the prejudice of a third person, except by virtue of another title similarly recorded, and the time shall begin to run from the date of the entry of the latter.' This, however, does not hold for extraordinary prescription of thirty years. Judgment of January 24, 1907 of the Supreme Court of Spain, 106 *Jurisprudencia Civil* 172 (ed. by Editorial Reus, S. A., Madrid, 1922.) 'Section 1949 (our § 1849) of the Code refers to *ordinary* prescription of ownership or of real rights when providing that such prescription shall not obtain against the title recorded in the registry of property, except by virtue of another title similarly recorded; but that provision is not applicable even in the absence of the condition of the third party which it requires *whenever* prescription for thirty years required by § 1959 (our § 1859) is involved'; 7 Oyuelo's *Digesto* 864, last paragraph (ed. by *Imprenta de Julio Cosano*, 1932)."

In its brief, appellant cites several judgments of the Supreme Court of Spain to hold that the person having a recorded title is the possessor. Said judgments are not applicable to this case. The Supreme Court of Spain in several of those cases cites § 41 of the Spanish Mortgage Law in the sense that a person having a recorded title is presumed to be the possessor. Said § 41 has no counterpart in our Mortgage Law inasmuch as it has its origin in Spain in an Act of 1909. 2 Morell-*Comentarios a la Legislación Hipotecaria* 798 (Editorial Reus S. A. de Madrid, 2d ed.) (1927). In a footnote at page 803 of the afore cited work of Morell, referring to the presumption of possession established in § 41, the following is stated: "With respect to the origin of this presumption a well-known commentator states the following: 'If possession consists mainly of an actual dominion of the thing, of an effective submission thereof to the human will, the so-called tabular or registral possession, based on the reg-

istration of a property or of a real right in the Registry in favor of a specific person, is not a true possession. The title issuing from the entry does not imply the right of possession of the thing nor the exercise of said right. Thus a person who has no recorded title may appear as a juridical possessor.' "

■ As to the second ground, we have already seen that civil action No. 820 for the annulment of will and revendication filed by plaintiff and appellant José Rosa against the Heirs of Manuel Jiménez Cruz on January 27, 1926 in the former District Court of San Juan was dismissed by judgment decreeing the lapse of proceedings by virtue of abandonment on November 17, 1950. Did the first civil action which had lapsed interrupt the term of prescription?

The provisions bearing on this aspect of the question in litigation are §§ 1845 and 1846 of the Civil Code of Puerto Rico which provide: the first: "civil interruption is caused by a judicial citation of the possessor, even should it be by order of a court or of a judge without jurisdiction" and second: "the judicial citation shall be considered as not made and shall not cause interruption: (1) If it should be void by reason of the absence of legal formalities, (2) If the plaintiff should withdraw his complaint or should permit the proceedings to lapse, (3) If the suit against the possessor should be dismissed."

Commenting on the second provision of § 1946 of the Spanish Civil Code, equivalent to the second provision of § 1846 of our Civil Code, Manresa says: "The same holds in connection with paragraph 2 of said Section, that is, where the plaintiff withdraws his complaint or permits the proceedings to lapse. Needless to say, the withdrawal erases and does away with the effects of the complaint, leaving everything in the same condition as before, as if the complaint had not been filed or the claim object thereof had not been deduced. As to the result of this withdrawal there can be no doubt or argument whatsoever inasmuch as it is the natural and logic

consequence of every withdrawal from suit. By virtue of it the law establishes the fiction that the claim has not existed, and that is why plaintiff having withdrawn his complaint, no decision as to the propriety or impropriety of the claim need be made, and the trial has no other effect or transcendency than the imposition of costs on plaintiff.

"Aside from that declaration, after the complaint is withdrawn, nothing remains connected with the suit emerging from said complaint, and since there is no controversy, the possession enjoyed by the possessor can not be considered interrupted or suspended because it has not been contradicted or challenged, and because, through that fiction of law to which we have previously referred, it is considered that there has been no contradiction or challenge whatsoever.

"What we have stated of the withdrawal of the complaint is applicable to the lapse of the proceedings, unknown in our former procedural laws and introduced in the present legislation, as a plausible and essential novelty to put an end to the incoveniences ailing the former regime, by means of the action of dismissal which by operation of law is vested in the judges and courts. The consequences of the lapse of proceedings are the same that we have set forth with regard to the withdrawal and by identical reason of law, the juridical consequences in both cases must also be the same." 12 Manresa 845–846 (5th edition of the Instituto Editorial Reus).

A doubt may arise as to whether we are confronted with a case of lapse of proceeding through abandonment or a case where the suit against the possessor was dismissed, inasmuch as the learned trial judge of the first civil action passed on the merits of a motion to set aside the judgment obtained by the lapse of proceedings through abandonment. The case would be the same. Commenting on the third paragraph of § 1946 of the Spanish Civil Code, equivalent to the third subdivision of § 1846 of our Code, Manresa continues: "As to the third of the cases set forth in § 1946, the explanation is briefer and simpler. We have already stated that by virtue

of the complaint filed, the possession is civilly interrrrupted for prescription purposes. The possesssor does not forfeit his possession, he does not cease in the enjoyment of the thing possessed, and that is why even if more than one year elapses, the results of the natural interruption would not come about. He continues possessing and enjoying the subject of the litigation; but the law, by a legal fiction, assumes the contrary, and that assumed interruption is not absolute as the natural one, but relative; it is not final but temporary and conditional, *in the sole event of the victory at the trial of the plaintiff who filed the complaint which gave rise to the citation that produced said interruption.* As a result of this, if on the other hand, the plaintiff in the suit is defeated, the interruption shall be inoperative, or, as the Code provides, the citation shall be considered as not made and shall not cause interruption; and in said case the time spent in the suit shall be added to the time previously accrued, as if the possession had continued, as a matter of fact and of law, without interruption, inasmuch as none of the material and the intellectual requirements, necessary for the possession, are in the least impaired, and therefore *all the time from the judicial citation until the final and unappealable judgment shall be understood as running for prescription purposes.*" 12 Manresa 848 and 849, edition cited.

The judgment will be affirmed.